UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IN RE: TERM COMMODITIES COTTON
FUTURES LITIGATION,

THIS DOCUMENT RELATES TO ALL
MEMBER CASES OF THIS ACTION:

12 Civ. 5126
12 Civ. 5269
12 Civ. 5334
12 Civ. 5380
12 Civ. 5470
12 Civ. 5563
12 Civ. 5732

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/18

MEMORANDUM and ORDER

12 CV 5126 (ALC) (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Before the Court is the defendants' motion to strike the expert reports of the plaintiff's expert, Dr. Craig Pirrong ("Pirrong"). Defendants Louis Dreyfus Company, B.V., Louis Dreyfus Company Holding Inc., Louis Dreyfus Company LLC, Terms Commodities Inc., Louis Dreyfus Company Cotton LLC (a/k/a/ Allenberg Cotton Co.) and Joseph Nicosia (collectively "defendants") contend that the plaintiff has "thwarted [the] orderly process" of expert discovery, as set forth in Federal Rule of Civil Procedure 26(a), "by continually changing Pirrong's opinions through seriatim unauthorized expert reports" submitted after deadlines for expert discovery imposed by the Court, and "by misstating in reports and testimony the bases for Pirrong's opinions." The defendants assert that the plaintiff's discovery failures are neither substantially justified nor harmless and, hence, that preclusion of Pirrong's reports is appropriate.

The plaintiff opposes the motion on the ground that the defendants have failed to establish non-compliance with Fed. R. Civ. P. 26(a) or 26(e). In the event that the Court finds

that the plaintiff has failed to comply with the rules governing expert discovery, such non-compliance is substantially justified or harmless and, thus, "the drastic remedy of preclusion" is disproportionate in this case.

## BACKGROUND

In this action, the plaintiff alleges that the defendants "bought large late long positions in Intercontinental Exchange ("ICE") cotton futures which manipulated prices because the supply of deliverable cotton was less than such long positions." In addition, the plaintiff contends, the defendants' "manipulative intent could be plausibly inferred from allegations that cotton futures prices at which [d]efendants refused to sell their long positions were higher than prices of the [d]efendants' sales contracts and of [d]efendants' purchase contracts."[1] According to the plaintiff, these issues were extensively analyzed by Pirrong in his three expert reports for which the plaintiff "served approximately 622 files totaling over 425 megabytes and Pirrong listed materials reviewed in forming his opinions."

According to the defendants, on February 6, 2015, the parties submitted to the Court a joint status report and proposed scheduling order that contemplated three rounds of expert reports: merits, responsive merits and rebuttal merits reports, followed by a period of expert discovery. The Court so ordered the proposed schedule on February 9, 2015. Thereafter, under revised scheduling orders relevant to expert reports, "opening reports were due on January 19, 2016, responsive reports were due on April 15, 2016, rebuttal reports were due on July 11, 2016, and expert discovery closed on October 28, 2016." The defendants maintain that, on January 19, 2016, "Pirrong submitted a 220-page opening expert report . . . followed by a 'supplemental'

---

[1] The plaintiff cites to In re Term Commodities Cotton Futures Litig., No. 12 Civ. 5126, 2013 WL 9815198, at *13-14, 17 (S.D.N.Y. Dec. 20, 2013), for the propositions concerning the claims in this action.

2

opening report on January 27, 2016, and an 'amended' opening report on February 8, 2016." The defendants assert that the supplemental and amended opening reports submitted by Pirrong "adjusted and revised various components of Pirrong's analysis" and constituted the first two violations of the Court's scheduling orders. Thereafter, on April 15, 2016, Pirrong submitted a 70-page responsive report ("Responsive Report") and, on July 11, 2016, a 230-page rebuttal report, followed by an "amended" rebuttal report on July 18, 2016, which "constituted the third violation of the Court's scheduling orders."

On September 23, 2016, the plaintiff served Pirrong's "supplemental" expert report (the "Supplemental Report"). According to the plaintiff, in the Supplemental Report, Pirrong corrected and supplemented certain conclusions and reasoning contained in his prior analyses. On September 29, 2016, the plaintiff produced five additional spreadsheets related to Pirrong's Supplemental Report. On September 30, 2016, the defendants deposed Pirrong for the first time and questioned him about the Supplemental Report. According to the plaintiff, "[i]f the opinions of . . . Pirrong, who is a leading expert on commodity futures manipulation, are accepted in this case, then [the] [p]laintiffs will present strong evidence of elements of manipulation set forth in this Court's decision on the motion to dismiss."

The defendants contend that the Supplemental Report constituted the fourth violation of the Court's scheduling orders. Among other things, they allege that the timing of the Supplemental Report is "suspect" because it was served the day after the defendants deposed John Mitchell ("Mitchell"), the plaintiff's physical cotton supply expert, and only one week before Pirrong was scheduled to be deposed. In addition, the defendants assert, the new analyses included in the Supplemental Report alter significantly Pirrong's opinions and were submitted only after the defendants' experts had their last opportunity to rebut Pirrong's analysis through the submission of expert reports. Also, while these new analyses altered Pirrong's calculations

3

in ways that would impact his prior reports, he did not disclose what the changed figures in his prior report would be.

As a result of these concerns, the defendants requested, and the Court permitted, additional depositions of Pirrong and Mitchell, which were conducted on October 25 and 26, 2016, respectively. According to the defendants, the depositions "confirmed that Pirrong's Supplemental Report did not, as plaintiff had represented to the Court, merely make 'limited corrections' to Pirrong's previous analysis." Rather, the defendants contend, they revealed that Pirrong's reports provided misleading information about the bases for a number of his opinions.

On November 14, 2016, the plaintiff submitted Pirrong's Addendum to the Supplemental Report. The plaintiff contends that the Addendum "listed every corrected number that changed in Pirrong's original three reports due to his Supplemental Report." He points out that Pirrong's Supplemental Report resulted in numerical changes to only 26 of 1,534 paragraphs in Pirrong's prior expert reports, or 1.7% of the paragraphs of those reports.

The defendants allege that the Addendum constitutes the fifth violation of the Court's scheduling orders. In addition to confirming that the Supplemental Report failed to disclose adequately the opinions Pirrong plans to offer at trial, the defendants assert, the Addendum fails to cure the majority of disclosure deficiencies the defendants identified previously. Moreover, they contend, the Supplement Report offers new analyses based on data and documents that were previously available to Pirrong but that he failed to address in any of his earlier reports.

***Defendants' Contentions***

The defendants move for preclusion of all of Pirrong's opinions or, at a minimum, the Supplemental Report and Addendum. They contend that the plaintiff has provided no justification for his disclosure violations let alone a substantial one, and that the violations are

4

not harmless. The defendants contend further that, far from providing a complete statement of the basis and reasoning for his opinions, Pirrong failed to disclose and made false statements concerning the sources of the data used in certain elements of his analysis. In making these allegations, the defendants focus on certain business transactions arising out of their engagement in activity involving the cotton futures market during the periods relevant to this action. According to the defendants, during his deposition, Pirrong made certain admissions concerning the sources of the data he relied on in preparing his expert reports. The admissions, defendants contend, establish that Pirrong failed to meet his obligation under Rule 26 to provide a complete statement of the opinions he intends to give, the basis and reasons for them, and the facts or data considered by him in forming his opinions. Additionally, according to the defendants, the plaintiff failed to produce all of the "Matlab" computer code Pirrong executed in performing his analysis.

The defendants also assert that the Supplemental Report constitutes an effort to bolster Pirrong's earlier reports by continuing to research the issues on which he has already opined and to supplement his opinions; moreover, the defendants contend, the Supplemental Report provides a new analysis not based on information or documents previously unavailable. Furthermore, according to the defendants, it is still unclear what opinions Pirrong intends to offer at trial.

### *Plaintiff's Contentions*

In response, the plaintiff asserts that "the sole reasons [sic] that Defendants have been able to develop for the drastic relief of preclusion have primarily involved (a) the modest, timely Supplemental expert report, (b) certain unconnected imperfections in Plaintiff's provision of expert materials, and (c) truthful testimony by Pirrong regarding [a] reduction in one part of [the]

5

deliverable supply, and the fact that . . . Pirrong reviewed sales contracts entered by the Defendants." In this way, he asserts, the defendants "try to transform this truthful testimony to what they call 'lies.'" Regarding Pirrong's alleged false statements about who analyzed certain relevant data, whether information about who performed the analysis was disclosed, and what constituted the actual source of the information pertaining to certain business transactions, the plaintiff contends that nothing was required to be disclosed under the rules governing expert discovery that was not disclosed, the source of all pertinent information was the defendants' own materials produced in the litigation and the defendants have had two opportunities to question Pirrong about his opinions. Moreover, they contend, there are no undisclosed assumptions.

On the issue of the "Matlab" computer code, the plaintiff responds that the relevant Matlab file permits the defendants to "re-create, re-run and otherwise fully scrutinize Pirrong's code for both the May and July 2011 contracts." In response to the defendants' contention that the plaintiff failed to disclose one of the work papers relied on in the Supplemental Report until after the close of expert discovery, the plaintiff states that the "five files produced to [the] [d]efendants the day before Pirrong's *first* deposition related to the [Supplemental Report] . . . and Defendants took a second deposition of Pirrong almost a month later specifically in order to question him about the [Supplemental Report]." Thus, the plaintiff maintains, "there is *no* missing Matlab file [and] Defendants had the five files produced the day before Pirrong's first deposition . . . almost *a month* before his second deposition." (Emphasis in the original)

On the issue of the timing of the submission of the Supplemental Report, the plaintiff notes that the report was finalized and served on the defendants on September 23, 2016, well before expert discovery closed. Moreover, he notes, the defendants cannot say that they were prejudiced by the production of the Supplemental Report, since they were permitted to take a

6

second deposition of Pirrong specifically in order that they might question him about the document. Furthermore, the defendants declined to request an opportunity to submit any response to the Supplemental Report.

Concerning submission of the Addendum, the plaintiff contends that it was prepared and submitted "only after [the] [d]efendants' highly exaggerated claims . . . that Pirrong's seven-page Supplement[al] [Report] supposedly left Pirrong's prior reports in 'disarray' thereby leaving [the] [d]efendants 'in the dark' about the Supplement[al] [Report]'s impact on Pirrong's prior reports." According to the plaintiff, the Addendum "clearly demonstrated that [the] [d]efendants' claims were false–the Supplement[al] [Report] resulted in numerical changes to only 26 paragraphs in Pirrong's prior reports." Moreover, he asserts, the "three-page Addendum is not prejudicial." It offers "no new opinions or methodologies" but rather is "a chart that identifies the 26 specific paragraphs in Pirrong's prior reports that were corrected as a result of his Supplement[al] [Report] and the corresponding specific numerical corrections to those twenty six paragraphs." The plaintiff also contends that the Supplemental Report did not change Pirrong's opinions on the three topics discussed in the report and offers no new analysis, contrary to the defendants' claims. In addition, the plaintiff denies that Rule 26(e) supplements are limited to information or documents that were previously unknown or unavailable.

The plaintiff contends that Pirrong's Initial, Responsive and Rebuttal Reports were served timely and provide highly detailed accounts of his opinions, the reasons therefor and the facts and data he relied upon. This is contrary to the circumstances presented in the cases to which the defendants make citation which involve reports served years after discovery closed, reports served in the midst of summary judgment briefing and reports served on the eve of trial. Thus, the plaintiff argues, the defendants' allegations of bad faith and "gamesmanship" are

unfounded, and the drastic remedy of preclusion is not warranted here.

## DISCUSSION

### *Legal Standards*

Federal Rule of Civil Procedure 26(a) requires that the disclosure of an expert witness "must be accompanied by a written report–prepared and signed by the witness . . . . [and] [t]he report must contain [inter alia]: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). Furthermore, "[a] party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

"Unless non-compliance with Rule 26(a) is 'substantially justified or is harmless,' failure to comply with the timing or substantive requirements governing expert disclosures may trigger Rule 37(c)(1) sanctions." Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 434 (S.D.N.Y. 2014) (citing Fed. R. Civ. P. 37(c)(1)). "Most notably, under Rule 37, it is within the court's discretion to preclude evidence submitted in violation of Rule 26(a) from use on a motion or at trial." Id. (citations omitted). At the same time, preclusion under Rule 37 is not automatic and "[a]s a general rule, absent prejudice and bad faith, courts will not resort to exclusion." Clayton v. Katz, No. 10-CV-575, 2015 WL 1500248, at *5 (S.D.N.Y. Mar. 31, 2015) (citation omitted). Thus, "[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., Ltd., 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (citation omitted).

In determining whether to impose the sanction of preclusion, a district court should consider the following: "(1) the party's explanation for the failure to comply with the discovery

8

order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997).

Rule 26(e) provides that '[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1)(A). However, "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions." Cedar Petrochemicals, 769 F. Supp. 2d at 278 (citation omitted).

In some cases, courts have found that, where an expert's report "does not rely [on] any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26." See id. (quoting Lidle v. Cirrus Design Corp., No. 08 Civ. 1253, 2009 WL 4907201, at *5-6 (S.D.N.Y. Dec. 18, 2009)) (internal quotation marks omitted). However, "[t]he duty to supplement is not limited to newly acquired information; it also extends to information that was not originally provided although it was available at the time of the initial disclosure or [discovery] response." American Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States, No. 04-CV-1798, 2009 WL 1617773, at *8 (E.D.N.Y. June 9, 2009) (citing 2007 Amendment to the Advisory Committee Note to Federal Rule of Civil Procedure 26(e))(internal quotation marks omitted). [2]

---

[2] "Rule 26(e) stated the duty to supplement or correct a disclosure or discovery response 'to include information thereafter acquired.' This apparent limit is not reflected in practice; parties recognize the duty to supplement or correct by providing information that was not

(continued...)

*Application of Legal Standards*

In this case, it is clear that, on at least one occasion, Pirrong relied upon information contained in work papers provided to him by the plaintiff's counsel in preparing his reports and, as a consequence, his analyses were based on data with which he was not directly familiar. The data in question had to do with certain of the defendants' business transactions arising out of their participation in the cotton futures market during the periods relevant to this action. Moreover, it appears that the plaintiff did not disclose to the defendants that Pirrong had relied upon the plaintiff's counsel's work product in preparing certain aspects of his reports.

Notably, Pirrong's actions in this regard, which inform a substantial part of the defendants' argument in support of their motion to strike Pirrong's expert reports, were made known to the defendants as a result of follow-up depositions of Pirrong and Mitchell conducted in October 2016, with the Court's permission, at the defendants' request following the plaintiff's submission of the Supplemental Report. As the plaintiff has observed, the purpose of the follow-up depositions was to question Pirrong about the Supplemental Report; however, the defendants expanded their inquiry to include questions regarding, among other things, the above-noted use by Pirrong of data provided to him by the plaintiff's counsel in the preparation of his reports.

In any case, the defendants' assertion, that Pirrong failed to provide a complete statement of the basis and reasons for his opinions, in violation of Rule 26(a), is founded upon the allegations, described above, concerning what Pirrong knew and when he knew it, at least with

---

²(...continued)
originally provided although it was available at the time of the initial disclosure or response. . . . Thus, under amended Fed. R. Civ. P. 26(e)(1)(A), a "party must supplement or correct 'in a timely manner.'" 2007 Amendment to the Advisory Committee Notes to Fed. R. Civ. P. 26(e).

respect to the data and information cited in support of his analyses. The Court is not persuaded, however, that Pirrong's reliance upon information contained in documents prepared by the plaintiff's counsel amounts to a failure to identify the basis and reasons for his opinions, in violation of Rule 26(a). However, even if Pirrong relied on materials provided by counsel, or on comparable sources of information, and failed to disclose the fact, under the circumstances presented here, the Court finds that preclusion of Pirrong's reports is not warranted where, as here, the defendants were able, through a second opportunity to conduct depositions, to explore the alleged misconduct and thus were not prejudiced.

In like manner, the defendants were not prejudiced by the production of the Supplemental Report insofar as they were permitted to take a second deposition of Pirrong specifically in order that they might question him about the document. Additionally, the defendants declined to request an opportunity to submit any response to the Supplemental Report. Thus, if the submission of the Supplemental Report amounts to non-compliance with Rule 26, such non-compliance is harmless. The Court finds no evidence of bad faith on the part of the plaintiff. Moreover, given that: (1) the plaintiff has provided a plausible explanation for any failure to comply with a disclosure requirement; (2) the opinions offered by Pirrong, a leading expert on commodity futures manipulation, are vital to the plaintiff's case; and (3), as discussed above, any prejudice to the defendants has been mitigated by the opportunity to conduct follow-up depositions on these matters, notwithstanding the plaintiff's non-compliance in certain limited respects with Fed. R. Civ. P. 26, the Court finds that preclusion of Pirrong's expert reports, including the Supplemental Report and Addendum thereto, is not warranted.

## CONCLUSION

For the reasons set forth above, the defendants' motion to strike Pirrong's expert reports, Docket Entry No. 441, is denied.

Dated: New York, New York  
March 23, 2018

SO ORDERED:

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE