# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
IN RE: TERM COMMODITIES            :
COTTON FUTURES LITIGATION          :
                                   :       MASTER DOCKET
                                   :       No. 12-cv-5126 (ALC) (KNF)
                                   :
                                   :
This Document Relates To: All Actions :
                                   :
                                   :
------------------------------------------------------x
```

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………1

ARGUMENT…………………………………………………………………………2

I.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)……3

    A.    Rule 23(a)(1): The Proposed Class Is So Numerous The Joinder Is Impracticable………………………………………………………………3

    B.    Rule 23(a)(2): There are Questions of Law and Fact Common to The Class……4

    C.    Rule 23(a)(3): Plaintiffs' Claims are Typical of the Class' Claims………………5

    D.    Rule 23(a)(4): Plaintiffs and Plaintiffs' Counsel well Fairly and Adequately Represent the Class………………………………………………………………6

II.    THE PROPOSED CLASS SATISFIES RULE 23(b)(3)……………………………8

    A.    Common Questions Predominate Because The Same Common Class-Wide Evidence Will be Used to Established Each Class Member's CEA and Sherman Act Claims……………………………………………………8

        1.    Plaintiffs' CEA Manipulation Claim is Susceptible to Common Class-Wide Proof………………………………………………9

        2.    Plaintiffs' CEA Aiding and Abetting Claim is Susceptible To Common Class-Wide Proof……………………………………11

        3.    Plaintiffs' Sherman Act Claim Is Susceptible to Common Class-Wide Proof……………………………………………12

        4.    Rule 23(b)(3) Does Not Require Common Proof of Damages In Order for Class Certification To Be Appropriate…………………13

        5.    Plaintiffs' Proposed Proof of Claim Procedure Ensures No Uninured Class Member Will Recover Damages…………………14

    B.    A Class Action is Superior To Other Available Methods, If Any, To Adjudicate This Action………………………………………………15

III.    THE PROPOSED CLASS IS ASCERTAINABLE……………………………17

IV.    PLAINTIFFS ALLEN AND LEDWITH HAVE CLASS STANDING WITH RESPECT TO THE MAY AND JULY CONTRACTS…………………………18

i

CONCLUSION…………………………………………………………………………..22

**Table of Authorities**

Cases                                                                                    Page(s)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*
   568 U.S. 455 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Comcast Corp. v. Behrend**,
   133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*C. States S.E. and S.W. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Davis v. City of N.Y.*,
   296 F.R.D. 158 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Grenawalt v. AT & T Mobility, LLC*,
   2014 WL 4832318 (S.D.N.Y. Sept. 29, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

**Halliburton Co. v. Erica P. John Fund, Inc.**,
   573 U.S. 258 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Amaranth Natural Gas Commodities Litig.*,
   269 F.R.D. 366 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*In re Elec. Books Antitrust Litig.*,
   11 MD 2293, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) . . . . . . . . . . . . . . . . . . . 5

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
574 F.3d 29 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
299 F.Supp.3d 430 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*In re Natural Gas Commodities Litig.*,
231 F.R.D. 171 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17, 18

*In re Platinum and Palladium Antitrust Litig.*,
2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*In re Sumitomo Copper Litig.*,
182 F.R.D. 85 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*In re Sumitomo Copper Litig.*,
194 F.R.D. 430 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Sumitomo Copper Litig.*,
194 F.R.D. 480 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Term Commodities Cotton Futures Litig.*,
371 F. Supp. 3d 95 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Term Commodities Cotton Futures Litig.*,
2013 WL 9815198 (S.D.N.Y. Dec. 20, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Term Commodities Cotton Futures Litig.*,
2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*In re Term Commodities Cotton Futures Litig.*,
2018 WL 1737706 (S.D.N.Y. Feb. 28, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Soybean Futures Litigation*
  892 F. Supp. 1025 (N.D. Ill. E.D. 1995 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Johnson v. Nextel Commun. Inc.*,
  780 F.3d 128 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*K.A. v. City of New York*,
  413 F. Supp. 3d 282 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

**Kendall v. Emps. Ret. Plan of Avon Prods.**,
  **561 F.3d 112 (2d Cir. 2009)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
  897 F.3d 88 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Meyer v. U.S. Tennis Ass'n*,
  297 F.R.D. 75 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

*Ploss v. Kraft Foods Grp., Inc.*,
  431 F. Supp. 3d 1003 (N.D. Ill. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Roach v. T.L. Cannon Corp.*
  778 F.3d 401 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sykes v. Mel S. Harris and Associates LLC*,
  780 F.3d 70 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

*Seijas v. Republic of Argentina*,
  606 F.3d 53 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S.Ct. 1036 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Wal-Mart Stores, Inc., v. Dukes*
  564 U.S. 338 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

**Statutes**

7 U.S.C. §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Rules**

Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 10

Rule 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4,5**

Rule 23(a)(1)-(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**Other Authorities**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1778  (3d ed. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Newberg on Class Actions § 3:54 (5th ed. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

## INTRODUCTION

Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs Mark Allen and Brian Ledwith ("Plaintiffs") respectfully submit this memorandum and the accompanying evidentiary materials[1] in support of their motion to certify this action as a class action on behalf of the Class[2] alleged herein.

This case involves what the financial press has called the "largest ever cotton squeeze" and the "worst thing that ever happened" to the cotton market.[3]  Plaintiffs contend and allege that Defendants[4] had the motivation, knowledge, ability, and intent to manipulate and did manipulate the prices of the May 2011 Intercontinental Exchange ("ICE") cotton futures contract ("May Contract") and July 2011 ICE cotton futures contract ("July Contract").  *Compare*

- *In re Term Commodities Cotton Futures Litig.,* No. 12 CIV. 5126 ALC KNF, 2013 WL 9815198 (S.D.N.Y. Dec. 20, 2013) ("*Cotton I*"), *on reconsideration in part*, No. 12 CIV. 5126, 2014 WL 5014235 (S.D.N.Y. Sept. 30, 2014) (denying Defendants' motion to dismiss Plaintiffs' manipulation and monopolization claims under the

---

[1] Submitted herewith is the Declaration of Christopher M. McGrath ("McGrath Decl.").

[2] The Class is defined as:

All persons, corporations and other legal entities that (a) purchased between March 30 and May 6, 2011 a May 2011 Contract in order to liquidate a short position in such contract, including short positions held as part of spread positions; or (b) contracted to purchase cotton on call based on the May 2011 Contract price, and set the price on this contract between March 30 and May 6; or (c) purchased between June 7 and July 7, 2011, a July 2011 Contract in order to liquidate a short position therein, including short positions held as part of spread positions; or (d) contracted to purchase cotton on call based on the July 2011 Contract price, and set the price on this contract between June 7 and July 7, 2011.

Excluded from the Class are Defendants, any parent, subsidiary, affiliate, agent or employee of any Defendant, and any co-conspirator.

[3] Gregory Meyer and Javier Blas, "Traders Cause Cotton Chaos with Bulk Deliveries," *Financial Times*, Sept. 25, 2011, available at: http://www.ft.com/cms/s/0/fec1a026-e77c-11e0-9da3-00144feab49a.html#axzz3o0m1SotH).

[4] "Defendants" refers to Louis Dreyfus Commodities B.V., Louis Dreyfus Commodities Cotton LLC (a/k/a Allenberg Cotton Company), LDC Holdings Inc., Term Commodities, Inc., Louis Dreyfus Commodities LLC, and Joseph Nicosia.

Commodity Exchange Act, 7 U.S.C. §1 *et seq.* ("CEA") and the Sherman Antitrust Act, 15 U.S.C. §2 *et seq.* ("Sherman Act")).

- *In re Term Commodities Cotton Futures Litig.,* No. 12-CV-5126 (ALC), 2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020) ("*Cotton IV*") (denying Defendants' motion for summary judgment and holding that Plaintiffs have adduced sufficient evidence for a reasonable jury to sustain all the elements of such claims).

- *In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126 ALC KNF, 2018 WL 1737706 (S.D.N.Y. Feb. 28, 2018) ("*Cotton II*") (granting Plaintiff Ledwith leave to rejoin the case in the filing of an amended consolidated complaint and finding that Plaintiff Ledwith adequately alleged actual damages and standing under the CEA with respect to the May Contract and July Contract).

- *In re Term Commodities Cotton Futures Litig.,* 371 F. Supp. 3d 95, 99 (S.D.N.Y. 2019) ("*Cotton III*") (denying Defendants' Rule 12(c) motion seeking to dismiss Plaintiffs' claims regarding the July Contract and finding that Plaintiff Ledwith had adequately alleged actual injury in connection with Defendants' alleged manipulation of the July Contract and otherwise sufficiently alleged violations of the CEA with respect to the July Contract).

- *Cotton IV,* 2020 WL 5849142 at *37-39 (denying summary judgment and holding that Plaintiffs have adduced sufficient evidence for a reasonable jury to sustain all the elements of their claims and finding that Plaintiff Allen and Plaintiff Ledwith have standing to assert July Contract claims).

Plaintiffs and all Class members traded in the same standardized cotton futures contracts, in the same unitary trading pit/market maintained by the ICE during the Class Period.  The Class Period is defined as March 30 through May 6, 2011 and June 7 through July 7, 2011.  Further facts are set forth in the context of argument below.

## **ARGUMENT**

In order to certify their Class under Rule 23(b)(3), Plaintiffs must satisfy all four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3). *K.A. v. City of New York*, 413 F. Supp. 3d 282, 301 (S.D.N.Y. 2019) (Carter, J.) ("*K.A.*"). Courts have repeatedly certified classes in cases (like this one) alleging manipulation in violation of the CEA, finding that each

element of Rule 23(a) and 23(b)(3) were readily satisfied.[5]  Plaintiffs demonstrate below that all

four requirements of Rule 23(a) are satisfied and both requirements of Rule 23(b)(3) are

satisfied.

## I.      THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)

Federal Rule 23(a)(1)-(4) provides that:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if: (1) the class is so numerous
> that joinder of all members is impracticable; (2) there are questions
> of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the
> class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. P. 23(a).  "Courts refer to these four prongs as 'numerosity,' 'commonality,'

'typicality,' and 'adequacy.'"  *K.A.*, 413 F. Supp. 3d at 301.  Plaintiffs satisfy each prong of Rule

23(a).

### A.      Rule 23(a)(1): The Proposed Class Is So Numerous That Joinder Is Impracticable

---

[5] *Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1009 (N.D. Ill. 2020) (certifying class of
wheat futures traders and involving two wheat futures contracts over a six-week class period),
*petition for leave to appeal denied*, 20-8001 (7th Cir. Feb. 21, 2020); *In re Amaranth Natural
Gas Commodities Litig.*, 269 F.R.D. 366 (S.D.N.Y. 2010) (certifying class of natural gas futures
contract traders and involving numerous different contract expirations over an eight-month class
period), *petition for leave to appeal denied sub nom. Amaranth Advisors, LLC, et al. v. Roberto
E. Calle Gracey*, et al., No. 10-4110-mv (2d Cir. Dec. 30, 2010); *In re Natural Gas Commodities
Litig.*, 231 F.R.D. 171, 179 (S.D.N.Y. 2005) (certifying class of both short and long traders in
more than sixty natural gas futures contracts over a three-year class period) *petition for leave to
appeal denied sub nom. Cornerstone Propane Partners*, *L.P., et al. v. Reliant Energy Services,
Inc., et al.*, No. 05-CV-5732 (2d Cir. Aug. 1, 2006); *In re Sumitomo Copper Litig.*, 182 F.R.D.
85, 87 (S.D.N.Y. 1998) ("*Sumitomo I*") (certifying a class both of long traders and short traders
in more than 36 futures contracts for a duration of over two years); *In re Sumitomo Copper
Litig.*, 194 F.R.D. 480 (S.D.N.Y. 2000) ("*Sumitomo II*") (same but 30-month class period),
*appeal denied*, 262 F.3d 134 (2d Cir. 2001); *In re Soybean Futures Litig.*, No. 89 C 7009, 1993
U.S. Dist. LEXIS 18738 (N.D. Ill. Dec. 27, 1993) (report and recommendation certifying a five-
week class of both longs and shorts in two separate futures contracts, adopted by the court on
January 26, 1994, as reflected at 892 F. Supp. 1025, 1031 n. 1 (N.D. Ill. 1995)).

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Numerosity is "presumed" to be satisfied if a class consists of forty or more members.  *Meyer v. U.S. Tennis Ass'n*, 297 F.R.D. 75, 82 (S.D.N.Y. 2013) (Carter, J.) ("Courts generally presume numerosity where a class consists of 40 or more members."); *see also Grenawalt v. AT & T Mobility, LLC*, 11-CV-2664, 2014 WL 4832318, at *3 (S.D.N.Y. Sept. 29, 2014) (Carter, J.) (finding numerosity factor satisfied where records indicated at least 70 class members).  Joinder need not be impossible.  *C. States S.E. and S.W. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007) ("The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.").  And Plaintiffs need not furnish "evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993).

There were approximately 96 traders with reportable positions (*i.e.*, "large traders") in the May Contract and July Contract during the Class Period.  McGrath Decl., ¶9.  The number of large traders in a futures contract is typically only a fraction of the total number of traders in such futures contract.  *Natural Gas*, 231 F.R.D. at 179.  Numerosity is satisfied.

**B.  Rule 23(a)(2): There are Questions of Law and Fact Common to The Class**

A "single" common question of law or fact will suffice to satisfy Rule 23(a)(2).  *K.A.*, 413 F. Supp. 3d at 302.  A question of law or fact is common to the class if the question is "capable of class-wide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke…Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members,

there is a common question." *Johnson v. Nextel Commun. Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (internal citations omitted); *see id.* ("[T]he proponent of class certification need not show that the common questions 'will be answered, on the merits, in favor of the class.'"). The commonality requirement poses "a 'low hurdle.'" *Sumitomo II*, 194 F.R.D. 480, 481 (S.D.N.Y. 2000).

Plaintiffs satisfy commonality. There are numerous questions of law common to all Class members, including what is required under the elements of CEA manipulation and Sherman Act monopolization. *Compare Cotton I* (delineating what is required under each of the elements of the claims here) *with Cotton IV* (holding and finding that Plaintiffs have submitted sufficient evidence to satisfy such elements).

Though the foregoing fully satisfies commonality, numerous additional common mixed questions of law and fact are present. *See* II.A. below.

## C.     Rule 23(a)(3): Plaintiffs' Claims are Typical of the Class' Claims

Typicality is satisfied where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Merck-Medco Managed Care,* 504 F.3d at 245 (internal citation omitted); *Brown*, 609 F.3d at 475 ("The commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both."). The typicality requirement is "not demanding." *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293, 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014).

Typicality is satisfied. Plaintiffs and Class members, all of whom purchased the exact same May and/or July 2011 Contracts in the exact same marketplace, were affected by – and their exact same legal claims under the CEA and Sherman Act arise from – Defendants'

unlawful common course of conduct that is alleged to have manipulated prices of the May and

July Contracts.  In each of the May and July Contracts, Defendants made large late purchases of

long positions in the face of a known congestion and represented that such purchases constituted

hedging. *Cotton I,* at *11-16; *Cotton IV* at *24-30.  But, far from reducing their price risks as

required by hedging, Defendants' large late purchases and bull spread futures positions greatly

increased Defendants' price risks in exactly the manner which would profit from a manipulative

squeeze.  *Id.*; *see* II.A (predominance of common questions) *and* IV (common course of conduct

in the context of class standing).

This Court has previously held that typicality is satisfied under similar circumstances in

numerous prior actions involving claims for manipulation in violation of the CEA.  *See, e.g.,*

*Sumitomo I*, 182 F.R.D. at 95 (typicality satisfied where futures traders' make the same legal

claims arising from the same alleged manipulation that was to be proved by the defendants' same

three-year long course of conduct involving scores of different futures contracts); *Amaranth*, 269

F.R.D. at 379 (same involving nine-month long course of conduct involving scores of different

futures contracts).

**D. Rule 23(a)(4): Plaintiffs and Plaintiffs' Counsel will Fairly and Adequately Represent the Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Second Circuit has explained that:

> [a]dequacy "entails inquiry as to whether: 1) plaintiff's interests are
> antagonistic to the interest of other members of the class and 2)
> plaintiff's attorneys are qualified, experienced and able to conduct
> the litigation."

*In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal

citations omitted).  "To avoid antagonistic interests, any 'fundamental' conflict that goes 'to the

6

very heart of the litigation,' must be addressed…." *In re Payment Card Interchange Fee*, 827 F.3d at 231 (2d Cir. 2016).

Courts deny class certification on the basis of the inadequacy of class representatives "only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *Facebook IPO*, 312 F.R.D. at 345 (internal quotation marks and citation omitted).

**Counsel is Adequate**.  "Adequacy of counsel asks whether the attorneys who seek to represent the class are competent to do the job." Newberg on Class Actions § 3:54 (5th ed.).  The Court appointed Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") as Interim Class Counsel on August 13, 2012.  ECF No. 14.  Lovell Stewart are adequate counsel to prosecute this litigation. Among other things, Lovell Stewart's work on behalf of the Class (with the assistance of Plaintiffs) has resulted in the denial, among others, of Defendants' motions to dismiss the complaint, Defendants' motion for summary judgment, and Defendants' *Daubert* motions to exclude experts.  *See* pp. 1-2 above.

**Plaintiffs are Adequate**.  Plaintiffs' interests are aligned with Class members' interests because they allege the same exact claims and suffered the same injuries—paying artificial prices for the May Contract and/or July Contract as a result of Defendants' common course of unlawful conduct.  *Grenawalt*, 2014 WL 4832318, at *4 ("Plaintiffs' interests are not antagonistic to those of the class, as they both allege the same wrongs and seek the same relief.").  The presence of common question of law and fact applicable to Plaintiffs and the Class (*see* "B" above), and the fact that Plaintiffs' claims are typical of the Class (*see* "C" above), further support a finding that Plaintiffs are adequate representatives.  *Davis v. City of N.Y.*, 296

F.R.D. 158, 167 (S.D.N.Y. 2013) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5) ("In practice, the 'commonality and typicality requirements of Rule 23(a) tend to merge,' and 'those requirements . . . also tend to merge with the adequacy-of-representation requirement.'"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."). Plaintiffs have actively participated in this case including by responding to Defendants' voluminous discovery requests, sitting for deposition and otherwise representing the interests of the Class. Plaintiff Allen has expended significant time and effort in this case to assist Lovell Stewart in the prosecution of the claims. Rule 23(a)(4) adequacy is established.

## II. THE PROPOSED CLASS SATISFIES RULE 23(b)(3)

### A. Common Questions Predominate Because The Same Common Class-Wide Evidence Will be Used to Establish Each Class Member's CEA and Sherman Act Claims

Rule 23(b)(3) requires that (1) "questions of law or fact common the class members predominate over any questions affecting only individual class members," and (2) "a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ P. 23(b)(3). The Second Circuit has held that the "'predominance' requirement is satisfied if: (1) resolution of any material 'legal or factual questions ... can be achieved through generalized proof,' and (2) these [common] issues are more substantial than the issues subject only to individualized proof.'" *In re Petrobras Securities*, 862 F.3d 250, 270 (2d Cir. 2017). Rule 23(b) does not require that common questions "be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013). Moreover, "individual questions need not be absent. . . The rule requires only that those

8

questions not predominate over the common questions affecting the class as a whole." *Sykes v. Mel S. Harris and Associates LLC,* 780 F.3d 70, 81 (2d Cir. 2015).

Courts in this District have repeatedly found the predominance requirement readily satisfied in cases (like this one) involving claims of commodity futures manipulation in violation of the CEA. *See, e.g.*, *Natural Gas*, 231 F.R.D. at 180-81; *Sumitomo I*, 182 F.R.D. at 90.

### 1. Plaintiffs' CEA Manipulation Claim is Susceptible To Common Class-Wide Proof.

The four elements of a CEA manipulation claim are: "(1) Defendants possessed an ability to influence market prices; (2) an artificial price existed; (3) Defendants caused the artificial prices; and (4) Defendants specifically intended to cause the artificial price." *Cotton IV*, at *24. Each of the foregoing elements presents common class-wide questions that may be answered by common class-wide proof. These common issues predominate.

**Ability to Influence Prices**. The ability to influence price element may be established by demonstrating that Defendants exacerbated a known congestion in the market. *Id*., at *24-25. Common class-wide evidence of Defendants' knowledge of a market congestion includes Defendants' internal documents and testimony reflecting Defendants' monitoring of the low levels of publicly reported ICE certificated stocks, Defendants' awareness that their long positions in the May and July 2011 contracts (and late additions thereto) were many times larger than ICE certified stocks and Defendants' repeated acknowledgment of long warehouse load out delays that would have prevented the certification of a sufficient additional amount of cotton to satisfy Defendants' long positions. *Id*., at *25-27. Common evidence of Defendants' intentional exacerbation of such market congestion includes Defendants' large, late additions to their May and July 2011 contract long positions, Defendants' uneconomic refusal to buy cheaper cotton in the cash market (including up to 800,000 bales from Glencore) and Defendants' slow pace of

"buying back" their sales contracts despite historically attractive prices. *Id*. The Court has held that the foregoing common class-wide evidence is sufficient for a reasonable jury to infer that Defendants knowingly exacerbated a market congestion. *Id*. Accordingly, the ability to influence element (and each other element of Plaintiffs' CEA claims, *see* below) may be proven by common class-wide evidence.

**Manipulative Intent**. Manipulative intent may be established inferentially from the conduct of Defendants. *Cotton IV*, at *27. Common evidence that Defendants acted with manipulative intent includes documents and testimony reflecting Defendants' large, late additions to their long cotton futures position in the face of a known congestion, Defendants' uneconomic refusal to engage buybacks despite record favorable prices, Defendants' refusal to purchase cheaper cotton in the cash market and Defendants' multiple misrepresentations to ICE (*e.g.*, Defendants represented to ICE that its futures position was a "bona fide hedge" even though such position greatly increased, instead of decreased, Defendants' price risk). Id., *27-30. The Court has held that the foregoing evidence could lead a reasonable jury to infer Defendants acted with manipulative intent. *Id*.

**Artificial Prices**. An artificial price is a price not reflective of supply and demand. *Cotton IV*, at *31. The existence of an artificial price may be demonstrated in numerous ways, including by analysis of the underlying commodity's normal market forces, historical prices, supply and demand factors, price spreads, and also the cash market for the commodity at issue. *Id*., at *31-33. Plaintiffs have proffered numerous well-accepted indicia of artificial prices, each of which is common class-wide evidence that may be used to prove that the prices of the May and July 2011 contracts were artificial during the Class Period. Such common class-wide evidence includes the following facts: (1) cotton futures prices switched from a declining

backwardation to record increasing backwardation, (2) the May-July spread reached record highs in a record short time, (3) there was substantial inversions in the May-July and July-December spread, and (4) the May and July futures prices diverged significantly from multiple different cash market prices. *Id*. In addition to the foregoing, the Court has accepted Dr. Pirrong's event study analysis, which demonstrates that May Contract prices were artificial by as much as 14-15 cents per pound and that July Contract prices were artificial by as much as 32 cents per pound. *Id*. The Court has held that the foregoing evidence and expert testimony is sufficient for a reasonable jury to infer that prices of the May and July Contracts were artificial during the Class Period. *Id*.

**Causation**. The causation element requires that Defendants be the proximate cause of the price artificiality. *Cotton IV*, at *33. Plaintiffs have offered numerous types of common class-wide evidence demonstrating that Defendants caused artificial prices. Such evidence includes Defendants' internal predictions that the backwardation in the futures market would greatly increase if a "large stopper" threated to take delivery, the market thereafter switching (as Defendants predicted) from declining backwardation to record increasing backwardation, the spreads increasing to record highs at the same time Defendants added to their long positions, and the corresponding collapse of the spreads as Defendants greatly reduced their long positions. Id., at *33-34. Plaintiffs have also proffered, and the Court has accepted as reliable and admissible, Dr. Pirrong's event study analysis, which indicates that Defendants caused the artificial prices observed during the Class Period. *Id*. The Court held that the foregoing evidence could lead a reasonable jury to conclude that Defendants were the proximate cause of the artificial prices of the May and July Contracts during the Class Period. *Id*.

### 2. Plaintiffs' CEA Aiding and Abetting Claim is Susceptible To Common Class-Wide Proof

To establish a claim for aiding and abetting under the CEA, Plaintiffs must demonstrate that the aiding and abetting corporate Defendants knew the principal (Defendant Nicosia) intended to manipulate the price of ICE cotton futures and the aiders and abettors intended to help the principal and did help the principal do so. *Cotton IV*, at *34-45. Plaintiffs' common class-wide evidence demonstrating that Defendants aided and abetted Defendant Nicosia's manipulation of the May and July Contracts includes the following: Defendant Nicosia was the head cotton trader, Executive Vice President of Defendant LDC and CEO of Defendant Allenberg, as CEO Defendant Nicosia oversaw the large, late purchases of long positions in the May and July Contracts and the slowing of the buy backs and the corporate Defendants financed and greatly profited from such long positions. *Cotton IV*, at *6, 8, 34-35. The Court found that a reasonable jury could infer that Plaintiffs have proffered enough facts and evidence that a reasonable jury could render a verdict in Plaintiffs' favor on their aiding and abetting claim. *Cotton IV*, at *2, 34-35.

### 3. Plaintiffs' Sherman Act Claim Is Susceptible to Common Class-wide Proof

To establish a claim for monopolization under Section 2 of the Sherman Act, Plaintiffs must establish: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Cotton II*, 2020 WL 5849142, at *35. Like Plaintiffs' CEA claims discussed above, each element of Plaintiffs' Sherman Act claim may be satisfied by common class-wide evidence.

**Monopoly Power**. Monopoly power (or market power) is the power to control prices or exclude competition. *Cotton IV*, at *35. Monopoly power may be shown through direct evidence of anticompetitive effects. *Id*. Common class-wide evidence of Defendants' market

power includes all the same common evidence that demonstrates Defendants' ability to influence prices (*see* "1" above), including evidence that Defendants' knowingly exacerbated a market congestion that resulted in a "U-turn" in backwardation to record levels (as Defendants internally predicted would happen). *Cotton IV*, at *35-36. The Court has held that this evidence is sufficient for a reasonable jury to find that Defendants had monopoly power. *Id*.

**Willful Acquisition**. This element requires Plaintiffs to show anticompetitive conduct, *i.e.*, conduct without a legitimate business purpose. *Cotton IV*, at *37. Plaintiffs can demonstrate Defendants' anticompetitive conduct through common class-wide evidence of Defendants' uneconomic conduct, such as adding to their large long positions in the cotton futures market (at high prices) while turning down large volumes of cotton in the cash market (at cheaper prices) and refusing to meaningfully engage in buy backs of sales contracts despite historically attractive prices. *Id*. The Court had held that a reasonable jury could conclude that Defendants' conduct was taken for anticompetitive purposes in violation of Section 2 of the Sherman Act. *Id*.

### 4. Rule 23(b)(3) Does Not Require Common Proof of Damages

Courts recognize that the need for individualized damage inquiries is a common feature of class actions, and it has long been settled that Rule 23(b)(3) does not require common proof of damages in order for class certification to be appropriate. *See, e.g., Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("We hold that *Comcast* [*Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)] does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a classwide basis."); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362, 131 S. Ct. 2541, 2558 180 L. Ed. 2d 374 (2011) (it is "clear that individualized monetary claims belong in Rule 23(b)(3)."); 2 William B. Rubenstein,

Newberg on Class Actions § 4:54 (5th Ed. 2013) ("[P]redominance requirement is satisfied despite the need to make individualized damage determinations.").  As the Supreme Court stated in *Tyson*:

> When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) ***even though other important matters will have to be tried separately, such as damages . . . peculiar to some individual class members***."

[Emphasis added] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (quoting CHARLES A. WRIGHT ET AL., 7AA FEDERAL PRACTICE AND PROCEDURE § 1778, at 123-24 (3d ed. 2005)).

### 5.   Plaintiffs' Proposed Proof of Claim Procedure Ensures No Uninured Class Member Will Recover Damages

Consistent with the law that Rule 23(b)(3) class certification may be granted where there are individual questions as to damages and uncertainty as to the outcomes of whether each class member has damages, the Supreme Court and Second Circuit also have recognized that the existence of uninjured class members does not bar class certification.  In *Tyson*, 136 S. Ct. at 1044, the Supreme Court affirmed certification of a class under the Fair Labor Standards Act ("FLSA") that contained over 200 uninjured class members.  *See also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276, 134 S.Ct. 2398, 189 L.Ed.2d 339 (2014) (noting that predominance would still be satisfied if a class contained uninjured class members that "defendant might attempt to pick off" through individualized inquiries).  In *Seijas v. Republic of Argentina*, 606 F.3d 53, 56–58 (2d Cir. 2010), the Second Circuit affirmed certification of eight classes of holders of defaulted Argentine bonds, expressing no concern that summary judgment briefing revealed that "[c]omplicated questions existed [ ] as to which bondholders were class members and as to how much each class member could recover." Similarly, in *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015), the Court concluded that the possibility

14

of uninjured plaintiffs did not defeat predominance "given the myriad common issues" in the case. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (emphasis added) (holding that even in cases where "the issue of injury-in-fact [not just damages calculation] presents individual questions, . . . it does not necessarily follow that they predominate over common ones and that class action treatment is therefore unwarranted.").

*Tyson* explained that if a class contains uninjured members, the relevant question is whether some "methodology will be successful in identifying uninjured class members," so as to permit any recovery to be disbursed only to class members that were injured. *Tyson Foods*, 136 S. Ct. at 1050. Here, Plaintiffs propose that there first be a trial in which the jury verdict establishes the daily amounts of price artificiality caused by Defendants. Then, if Plaintiffs are successful, there will be a claims procedure in which Class members submit verified proofs of claims establishing their transactions in the May and July Contracts.

Pursuant to this procedure, Class members whose verified submissions demonstrate transactions which result in entitlement to a payout under the artificiality numbers determined by the jury, will receive damages. Class members whose verified proofs of claims do not demonstrate transactions which qualify for a payout under the artificiality numbers found by the jury, will not receive a payment. Using this procedure, no uninjured Class member will receive a damages award.

### B.   A Class Action is Superior To Other Available Methods, If Any, To Adjudicate This Action

Rule 23(b)(3) "superiority" requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this determination, a court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Each of the four factors favors certification.

**Rule 23(b)(3)(A).**  Many Class member claims will be relatively small compared to the high cost of litigating claims for manipulation such that many claims will likely be "negative value" claims.  *Natural Gas*, 231 F.R.D. at 185; *Amaranth*, 269 F.R.D at 386, *Sumitomo I*, 182 F.R.D. at 97.  That is, the high costs of prosecuting an individual manipulation claim would likely be greater than the prospective benefit of pursuing such a claim on an individual basis.  Indeed, since the original complaints herein were filed and thereafter consolidated in 2012, no separate individual action has been filed. This indicates Class members are unlikely to pursue a separate action.

**Rule 23(b)(3)(B).**  Plaintiffs are unaware of any other litigation concerning this controversy that has been brought by a Class member.  This favors certification.

**Rule 23(b)(3)(C).**  Judicial economy favors continuing to concentrate the litigation before this Court.  The Court, over the last eight-plus years, has expended significant time and resources resolving many different motions (including substantial motions to dismiss and for summary judgment), issuing lengthy orders and otherwise has significant experience with the issues in this case.  Accordingly, continuing to proceed before this Court will promote judicial efficiency and reduce litigation costs.  Also, the ICE (the futures exchange on which the May and July Contracts traded), is located in this District.

**Rule 23(b)(3)(D).**  The "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).  This action has been pending more than eight years and there have been no substantial difficulties in

16

managing the case.  Indeed, the parties have already completed fact and expert discovery and the

Court has already denied Defendants' motion to dismiss.  Plaintiffs respectfully submit that this

case is more manageable than prior CEA class actions previously certified by this Court that

involved more defendants, longer class periods or more than two futures contracts.  *See* fn. 5

above (collecting certified CEA actions).  Superiority is satisfied.

## III.    THE PROPOSED CLASS IS ASCERTAINABLE

Under the Second Circuit's implied requirement of ascertainability, a court is "to

consider whether a proposed class is defined using objective criteria that establish a membership

with definite boundaries. **This modest threshold requirement will only preclude certification**

**if a proposed class definition is indeterminate in some fundamental way.**"  *Petrobras*

*Securities*, 862 F.3d at 269 (emphasis added).  There is no administrative feasibility requirement

and ascertainability "does not directly concern itself with the plaintiffs' ability to offer *proof of*

*membership* under a given class definition."  *Id*.  Instead, a class may be ascertainable when it

is "identified by subject matter, timing, and location.  *See id*. at 269-70 (ascertainability met

where class was identified as people who acquired specific securities during a specific period in

"domestic transactions"); *see Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897

F.3d 88, 91 n. 2 (2d Cir. 2018) (ascertainability met where class was identified as purchasers of

the two products before November 2012 and 2013, respectively, in 18 identified states).  "The

standard for ascertainability is not demanding. It is designed only to prevent the certification of a

class whose membership is truly indeterminable."  *Facebook IPO,* 312 F.R.D. at 353.

Here, class membership can easily be defined using objective criteria to identify subject

matter (individuals who purchased May or July Contracts in order to liquidate a short position),

timing (between March 30 and May 6, 2011 and/or June 7 and July 7, 2011, respectively).

*Compare supra*, fn. 2 (defining proposed Class) with *Petrobras Securities*, 862 F.3d at 269-70 and *Johnson & Johnson*, 897 F.3d at 91 n. 2.  To make such a determination, Plaintiffs and the Class will rely upon their sworn statements and the records of their actual trades.  *See*, e.g., *Amaranth*, 269 F.R.D at 381 (finding a class ascertainable); *Natural Gas*, 231 F.R.D. at 180 (finding a class of purchases *and/or* sellers of futures contracts to be ascertainable).  Accordingly, the Class is defined using "objective criteria" satisfying the implied ascertainability requirement.

## IV.  PLAINTIFFS ALLEN AND LEDWITH HAVE CLASS STANDING WITH RESPECT TO THE MAY AND JULY CONTRACTS

On *three* separate occasions, this Court has rejected Defendants' challenges to standing and held that Plaintiffs may assert claims arising from both May and or July Contracts.[6]  *Cotton II*, 2018 WL 1737706 at *8–9; *Cotton II*, 371 F. Supp. at 100 (S.D.N.Y. 2019); *Cotton IV*, 2020 WL 5849142at *37.  "A plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal

---

[6] It is clear that only "one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007).  In other words, "[i]n a class action, once standing is established for a named plaintiff, standing is established for the entire class." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009).

quotations and citations omitted).[7]  Nothing has changed since the Court's previous decisions,

which establish that Plaintiffs satisfy both prongs.[8]

First, the named Plaintiffs suffered actual injury as a result of Defendants' illegal

conduct.  *See NECA-IBEW*, 693 F.3d 1t 162.  This Court has already identified the injury:

> During the Class Period, Allen liquidated short positions in the May
> Contract and long positions in the July Contract; and Ledwith
> liquidated short positions in both the May and July Contracts.
> Plaintiffs estimate that Allen's transactions resulted in net
> artificiality paid of $15,639.70 and Ledwith's transactions resulted
> in net artificiality paid of $56,062

*Id*. at *39.

Likewise, this Court has determined that Plaintiffs have sufficiently alleged that their

injury resulted from Defendants' alleged illegal conduct.  In denying Defendants' summary

judgment motion, the Court reaffirmed Judge Fox's finding that the claims in this case are

analogous to the theory of persistent suppression alleged in both *In re LIBOR*, 299 F.Supp.3d

430 (S.D.N.Y. 2018) and *In re Platinum and Palladium Antitrust Litig.*, 14-CV-9391 (GHW),

2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017), *on reconsideration*, 449 F. Supp. 3d 290

(S.D.N.Y. 2020).  *Cotton IV*, 2020 WL 5849142 at *39.

This Court has acknowledged that Plaintiffs allege a single course of conduct to

manipulate the May and July contracts, *i.e.,* that "Defendants acted uneconomically by (1) failing

to re-tender cotton, which further depleted deliverable supplies and further inflated prices; (2)

decertificating all of the cotton they received delivery on in the May Contract; and (3) refusing

---

[7] This Court has already held that Plaintiffs have sufficiently alleged standing under Article III
and the CEA.  *Cotton IV*, 2020 WL 5849142, at *39; *see Cotton II*, 2018 WL 1737706, at *9.
[8] "At the class certification stage, the Second Circuit has approved of evaluating standing by
relying on the pleadings and 'constru[ing] the complaint in favor of the complaining
party.'"  *Leber v. Citigroup 401(k) Plan Inv. Comm.,* 323 F.R.D. 145, 154 (S.D.N.Y. 2017)
(citing *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263 (2d Cir. 2006)).

cheaper cotton from the cash market." *Cotton IV*, 2020 WL 5849142, at *8 (internal citations

omitted); *see id*. at *8 ("Plaintiffs allege that Defendants' conduct during the July 2011 contract

was substantially similar to their conduct during the May 2011 contract."); *see Cotton II*, 2018

WL 1737706, at *1 ("Allen alleges that there was one claim for manipulation of both contracts

through an interconnected series of uneconomic acts by the defendants.").  In sum,

> [e]xtending the logic of *Platinum* and *LIBOR* to this case, Judge
> Fox concluded that Plaintiffs in this case are "alleging ongoing
> manipulation through a series of uneconomic acts and, thus, can be
> said to have alleged actual damages, adequately, to establish
> standing under the CEA." This Court similarly concluded that "[t]he
> factual allegations in the TAC sufficiently allege that Ledwith
> 'traded and lost money during defendants' alleged market
> manipulation' of the July 2011 Contract."

*Id*. at *39 (internal citations omitted).  Thus, this Court has identified sufficiently alleged injuries

(transacting in contracts at artificial prices) and found that those injuries arise from the same

unlawful course of conduct by Defendants.  The first prong of class standing is satisfied.

Plaintiffs also satisfy the second prong because Defendants' ongoing, uneconomic

conduct "implicates the same set of concerns" with respect to both the May and July Contracts.

*See NECA-IBEW*, 693 F.3d at 163.  Plaintiffs who held positions in the May Contract and/or the

July Contract have the same concerns. Plaintiffs have always alleged a single manipulative

scheme; indeed, the Court's entire summary judgment analysis examined Defendants' alleged

manipulation of the May and July contracts as a single, ongoing course of conduct.  *See Cotton

IV*, 2020 WL 5849142, at *24-37.  That the alleged course of uneconomic conduct was part of a

single scheme is also supported by the Court's rejection of Defendants' defenses to the CEA

claim, which applied equally to both the May and July Contracts.  *See id*. at 26-27 (rejecting

argument as to both contracts regarding ICE oversight, that Defendants did not exacerbate

market congestion, and the shorts failed to adequately prepare for delivery); *id*. at *29-30

(rejecting Defendants' argument that their positions in the May and July contracts were part of hedging activity to satisfy large sales commitments throughout the time period); *id*. at \*32 (rejecting the Defendants' challenge to artificial prices by relying on its conduct in the cash market from March through June, finding "that LDC Defendants' transactions at higher prices in the cash market constitute only four out of the 194 sales that Defendants made from March 1 to June 22, 2011").

Moreover, the Court's finding to support allegations of artificial prices show that evidence is largely the same. *Id*. at \*33 ("The sudden, historic rise in backwardation and spreads in the May-July and July-December contracts, coupled with the divergence between the cash market and the futures market, is further evidence of price distortion and an artificial price.").

The Court's analysis of a unified course of conduct – not one bifurcated by separate schemes for the May and July contract – continued in denying Defendants' motion for summary judgment on the Sherman Act claims.

> Plaintiffs plausibly allege that Defendants' conduct—of acquiring large long positions and continuing to add to them, holding these positions while the rest of the market liquidated, insisting on record ratios of deliveries, depleting certificated supplies of cotton, turning down cheaper cotton in the cash market and overpaying for cotton in the futures market—was taken for the purpose of undermining competition and has no legitimate business purpose.

*Id*. at \*37.

Still further, though not required, Defendants themselves argue that they engaged in a single course of conduct. In their Eighth Affirmative Defense, Defendants allege: "Defendants' purchases of long positions in the May 2011 Contract and the July 2011 Contract were entered into in connection with actual commercial need for cotton and were not undertaken with manipulative intent."  Defendants' Answer, ECF No. 90, p. 23; ECF No. 494, p. 22.

21

Thus, Plaintiffs each has a sufficient interest in proving Defendants' entire series of interconnected uneconomic acts because they show Defendants' motivation, knowledge, ability, and intent and also overcome Defendants' affirmative defenses.  In these circumstances, Plaintiffs' claims that they were injured in the May and July Contracts "implicate the same set of concerns."  *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 157 (S.D.N.Y. 2017) (where "claims involve similar inquiries and proof" they "implicate the same set of concerns"). The second prong of class standing is satisfied.

## CONCLUSION

The Court should grant Plaintiffs' motion for class certification.

Dated: January 8, 2021
       New York, New York

Respectfully submitted,

*/s/ Christopher Lovell*
Christopher Lovell
Christopher M. McGrath
Travis H. Carter
**LOVELL STEWART HALEBIAN JACOBSON LLP**
500 5th Avenue, Suite 2440
New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Interim Class Counsel*